**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DELOIS GALLIEN, | ) NO. CV 12-1246-E |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) **AND ORDER OF REMAND** |
| Defendant. | ) |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on February 17, 2012, seeking review of the Commissioner's denial of disability benefits. The parties filed a consent to proceed before a United States Magistrate Judge on

March 26, 2012.  Plaintiff filed a motion for summary judgment on August 8, 2012.  Defendant filed a cross-motion for summary judgment on September 10, 2012.  The Court has taken the motions under submission without oral argument.  See L.R. 7-15; "Order," filed February 22, 2012.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff, a former home health aide, asserts disability since September 30, 2008, based on alleged heart problems (Administrative record ("A.R.") 100-06, 120, 124, 143-44).  Plaintiff alleges "severe mr [mitral regurgitation,] tr [tricuspid regurgitation,] mitral valve prolapse[,] s and p [status post] mv [mitral valve] replacement," which assertedly causes her to have shortness of breath and problems breathing (A.R. 143-44; see also A.R. 379 (medical record containing diagnoses)).[1]

The ALJ found the following severe impairments: "history of congestive heart failure, status post mitral valve replacement, and low back pain" (A.R. 13).  The ALJ found that, despite these impairments, Plaintiff retains the residual functional capacity to perform medium work with some postural and environmental limitations, and can perform her past relevant work (A.R. 14-16 (adopting consultative examiner's opinion at A.R. 187-88, and vocational expert testimony at A.R. 39, 41-42)).  The Appeals Council denied review

---

[1]   The definitions for medical abbreviations and medical terms noted herein in brackets are derived either from the record as cited, or from a medical dictionary available online at http://www.medilexicon.com (last visited Sept. 25, 2012).

2

(A.R. 1-3).

## STANDARD OF REVIEW

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006).

## DISCUSSION

**I.   Summary of the Medical Record Concerning Plaintiff's Heart Condition.**

Plaintiff was treated at Harbor UCLA Medical Center Cardiology Clinic and the Hubert H. Humphrey Comprehensive Health Center. See A.R. 161, 178-82, 214-424, 427-49, 451-52, 455-57, 459-71 (medical records); see also A.R. 29 (testimony). In or about January 2008, doctors diagnosed, inter alia, congestive heart failure and atrial fibrillation (A.R. 235-36, 375-79). Plaintiff underwent mitral valve replacement for mitral regurgitation on January 22, 2008 (A.R. 379).

Consulting examiner Dr. Sohelia Benrazavi provided a Complete Internal Medicine Evaluation for Plaintiff dated June 9, 2009 (A.R. 183-88). In the course of making this evaluation, Dr. Benrazavi did not review any medical records from other physicians (A.R. 187). Plaintiff complained to Dr. Benrazavi of congestive heart failure, diabetes, and back pain, and said she tires easily and has shortness of breath (A.R. 183-84). On examination, Plaintiff had "metallic" heart sounds but no evidence of cardiomegaly [enlarged heart] (A.R. 185, 187). An EKG showed sinus bradycardia at a rate of 59 beats per minute but no signs of ischemia [restriction in blood supply] (A.R. 187). Dr. Benrazavi opined that Plaintiff would be capable of medium work with climbing and stooping limitations (A.R. 187-88). State agency physician Dr. J. Akers reviewed Dr. Benrazavi's evaluation and completed a Physical Residual Functional Capacity Assessment form, also opining that Plaintiff is capable of medium work (A.R. 190-98).

When Plaintiff presented to the Cardiology Clinic for a follow up visit on August 28, 2009, she reported "doe" [Dyspnea on Exertion, or shortness of breath] with two blocks of walking, and "steady 2 pillow orthopnea" [discomfort in breathing from lying flat].[2] Plaintiff's

---

[2] In an exertion questionnaire dated May 18, 2009, Plaintiff reported that she lives with family and does household chores, such as dusting, washing dishes or folding clothing, all while sitting down (A.R. 136-37). Plaintiff said she tries to walk every day but has to rest and use a cane (A.R. 136). She said it takes her an hour to walk long blocks (A.R. 136). Plaintiff reported having to rest after showering and eating breakfast because she gets tired very easily and has shortness of breath (A.R. 136). Plaintiff asserted she had not lifted things since her surgery in 2008 (A.R. 137). Plaintiff reportedly could not stoop, bend, or lift because she gets shortness of breath and
(continued...)

treating physician, Dr. Arsen Hovanesyan, noted "Class II" (A.R. 429). Dr. Hovanesyan's impression was "s/p MVR" [status post mitral valve replacement] and "a-fib" [atrial fibrillation], and his plan was to have Plaintiff continue her current medications (A.R. 429). Plaintiff returned on March 9, 2010, reporting increased "doe" over the past month (A.R. 428). Dr. Hovanesyan noted "Class II-III symptoms (was Class II before)" (id.). Dr. Hovanesyan planned for Plaintiff to undergo further testing to evaluate Plaintiff's mitral valve in one to two months (A.R. 428). Plaintiff returned on July 2, 2010, reporting that she "feels well" with no complaints, is able to do "ADL's" [activities of daily living], but has "doe" with more exertion and no "cp" [chest pain] (A.R. 427). Upon examination, Dr. Hovanesyan stated, inter alia, "suspect ? diastolic dysfn" [dysfunction], "NYHA II," and indicated that Plaintiff should continue her current regimen (A.R. 427).

Dr. Hovanesyan's "Class II," "Class II-III," and "NYHA II," notations refer to the New York Heart Association Functional Classification of heart failure. See Swortfiguer v. Astrue, 2012 WL 3637923, at *5 n.3 (E.D. Cal. Aug. 22, 2012) (discussing classifications); Feskens v. Astrue, 804 F. Supp. 2d 1105, 1120 (D. Or. 2011) (same); see also Brawders v. Astrue, 793 F. Supp. 2d 485, 493-94 (D. Mass. 2011) (same). "Doctors usually classify patients' heart failure according to the severity of their symptoms. . . . [The New York Heart Association (NYHA) Functional Classification] places

---

[2](...continued)
tires easily (A.R. 138; see also A.R. 27-30, 34-37 (Plaintiff testifying similarly)).

1  patients in one of four categories based on how much they are limited
2  during physical activity." American Heart Association, <u>Classes of</u>
3  <u>Heart Failure</u>, available online at http://www.heart.org/HEARTORG/
4  Conditions/HeartFailure/AboutHeartFailure/Classes-of-Heart-Failure_UCM
5  _306328_Article.jsp (last visited Sept. 26, 2012).[3] Dr. Hovanesyan's
6  Class II and Class II-III notations indicate slight to marked
7  functional limitations. <u>Id.</u>
8  ///
9  ///
10 ///
11 ///

---

[3] The categories are:

| | |
|---|---|
| Class I | Patients with cardiac disease but resulting in no limitation of physical activity. Ordinary physical activity does not cause undue fatigue, palpitation, dyspnea or anginal pain. |
| Class II | Patients with cardiac disease resulting in slight limitation of physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea or anginal pain. |
| Class III | Patients with cardiac disease resulting in marked limitation of physical activity. They are comfortable at rest. Less than ordinary activity causes fatigue, palpitation, dyspnea or anginal pain. |
| Class IV | Patients with cardiac disease resulting in inability to carry on any physical activity without discomfort. Symptoms of heart failure or the anginal syndrome may be present even at rest. If any physical activity is undertaken, discomfort increases. |

<u>Id.</u>

**II. The ALJ Erred in the Evaluation of Evidence from Plaintiff's Treating Physician.**

In determining Plaintiff's residual functional capacity, the ALJ did not discuss Dr. Hovanesyan's treatment records beyond referencing Plaintiff's indication that she "feels well" and can do activities of daily living. See A.R. 15. The ALJ did not mention Dr. Hovanesyan's NYHA classifications (id.).

A treating physician's conclusions "must be given substantial weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); see Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) ("the ALJ must give sufficient weight to the subjective aspects of a doctor's opinion . . . This is especially true when the opinion is that of a treating physician") (citation omitted); see also Orn v. Astrue, 495 F.3d 625, 631-33 (9th Cir. 2007) (discussing deference owed to treating physician opinions). Even where the treating physician's opinions are contradicted,[4] "if the ALJ wishes to disregard the opinion[s] of the treating physician he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citation, quotations and brackets omitted); see Rodriguez v. Bowen, 876 F.2d at 762 ("The ALJ may disregard the treating physician's opinion, but only by setting forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial

---

[4] Rejection of an uncontradicted opinion of a treating physician requires a statement of "clear and convincing" reasons. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984).

7

evidence") (citation and quotations omitted).

In the present case, the ALJ appears to have ignored or implicitly rejected Dr. Hovanesyan's opinion concerning Plaintiff's functional limitations without articulating "specific, legitimate" reasons for doing so. The ALJ cited the contrary opinions of non-treating physicians (A.R. 15-16). However, the contradiction of a treating physician's opinion by another physician's opinion triggers rather than satisfies the requirement of stating "specific, legitimate" reasons." See, e.g., Valentine v. Commissioner, 574 F.3d 685, 692 (9th Cir. 2009); Orn v. Astrue, 495 F.3d at 631-33; Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). The ALJ's failure to acknowledge Dr. Hovanesyan's opinion concerning Plaintiff's limitations was in error. See Lingenfelter v. Astrue, 504 F.3d 1028, 1045 (9th Cir. 2007) ("The decision of the ALJ fails . . . when the ALJ completely ignores or neglects to mention a treating physician's medical opinion that is relevant to the medical evidence being discussed.") (citations omitted); Carter v. Astrue, 308 Fed. App'x 75, 76 (9th Cir. Jan. 8, 2009) (ALJ's failure to mention treating physician's findings was erroneous in light of the ALJ's obligation to explain why significant probative evidence has been rejected) (citations omitted).[5]

The ALJ's error in failing to account for Dr. Hovanesyan's classifications may have been material. The residual functional capacity the ALJ adopted, which appears to have been based on the

---

[5] The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

8

consultative examiner's opinion, did not address these classifications. The consultative examiner's opinion predated Dr. Hovanesyan's notes and did not involve any record review. See A.R. 187-88 (consultative examiner's report). The consultative examiner did not offer an opinion concerning Plaintiff's NYHA classification. See id.

Absent expert assistance, the ALJ could not competently translate Dr. Hovanesyan's classifications into a residual functional capacity assessment. It is well-settled that an ALJ may not render his or her own medical opinion or substitute his or her own diagnosis for that of a claimant's physician. See Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ erred in rejecting physicians' opinions and finding greater residual functional capacity based on claimant's testimony about a road trip; there was no medical evidence to support the ALJ's determination); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion") (internal quotation marks and citation omitted); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"). In this case, if the ALJ believed a particular residual functional capacity assessment would account for the NYHA limitations, the ALJ should have called on an expert to provide competent evidence on such issues. Compare Diaz v. Astrue, 2012 WL 43622, at *10 (E.D. Cal. Jan. 9, 2012) (ALJ relied on medical expert to translate NYHA classification into residual

functional capacity; expert testified that Class III level signifies capacity for sedentary work only, and Class II precludes heavy work only); see also Brawders v. Astrue, 793 F. Supp. 2d at 494 (concluding that ALJ was not qualified to translate NYHA Class II criteria into an actual residual functional capacity; without a medical source statement of the claimant's ability to function, substantial evidence did not support ALJ's finding that the claimant could do light work).

Defendant argues that Dr. Hovanesyan never actually made a NYHA classification diagnosis. See Defendant's Motion, p. 2. According to Defendant, Dr. Hovanesyan was simply reporting Plaintiff's subjective complaints rather than offering any opinion regarding Plaintiff's medical condition. However, it is not clear from Dr. Hovanesyan's treatment notes, which include findings on examination and testing, that the doctor was simply reporting Plaintiff's subjective complaints when stating the NYHA classifications. At a minimum, the ALJ should have contacted Dr. Hovanesyan to clarify the intendment of the doctor's NYHA statements. "The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty exists even when the claimant is represented by counsel." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). Section 404.1512(e) of 20 C.F.R. provides that the Administration "will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all of the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." See Smolen v. Chater, 80 F.3d at 1288 ("If the ALJ

thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them. He could also have continued the hearing to augment the record") (citations omitted).

**III. Remand is Appropriate.**

When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Because the circumstances of the case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011).

The Ninth Circuit's decision in Harman v. Apfel, 211 F.3d 1172 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) ("Harman") does not compel a reversal directing the payment of benefits. In Harman, the Ninth Circuit stated that improperly rejected medical opinion evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Harman, at 1178 (citations and quotations omitted). Assuming, arguendo, the Harman holding survives the Supreme Court's decision in INS v. Ventura, 537

11

U.S. at 16,[6] the Harman holding does not direct reversal of the present case. Here, the Administration must recontact Plaintiff's treating physician or obtain expert testimony concerning "outstanding issues that must be resolved before a determination of disability can be made." Further, it is not clear from the record that the ALJ would be required to find Plaintiff disabled for the entire period of claimed disability were the opinions of Dr. Hovanesyan credited.

**CONCLUSION**

For all of the foregoing reasons,[7] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 1, 2012.

_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[6] The Ninth Circuit has continued to apply Harman despite INS v. Ventura. See Luna V. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010).

[7] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the payment of benefits would not be appropriate at this time.